IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

No. _____

| | |
|---|---|
| BILL RAYBURN )<br>    Plaintiff )<br>)<br>v. )<br>)<br>SGT. WALL, SGT. HEH, C.O. WILKES )<br>AND C.O. BILES, )<br>    Defendants )<br>_____ ) | COMPLAINT |

### Introduction

1. This is an action under 42 U.S.C. §1983 by a prisoner of the State of North Carolina. This action is brought against officers of the North Carolina Department of Correction in their personal capacities. Plaintiff Rayburn alleges that Defendants violated his rights under the Constitution to be free from cruel and unusual punishment by maliciously and unnecessarily inflicting pain upon him. All of the actions of Defendants alleged herein were carried out under color of state law.

### Jurisdiction

2. The jurisdiction of this Court over the claims of the Plaintiff is conferred by 28 U.S.C. §1331, in that the claims arose under the Constitution of the United States; and by 28 U.S.C. §1343, in that the claims are for redress of a deprivation under color of state law of rights secured by the Constitution of the United States.

### Venue

3. Venue is appropriate in this Court, pursuant to 28 U.S.C. §§113(c) and 1391(b)(2), because the events and omissions giving rise to Plaintiff's claims occurred within Anson County North Carolina which is in the Western District of North Carolina.

## Parties

4. At all times pertinent to the transactions alleged in this Complaint, the Plaintiff was a prisoner of the State of North Carolina, imprisoned at Lanesboro Correctional Institution (LCI).

5. The Defendants are officers of the North Carolina Department of Correction, acting at all times pertinent to the transactions alleged in this Complaint under color of state law. Their complete and correct names are unknown to Plaintiff at this time and will be added to this Complaint by amendment when discovered.

## Statement of Facts

6. In late 2008, Plaintiff reported to officers at LCI that Jaamall Oglesby, an inmate in a cell near the cell in which Plaintiff was held possessed a knife or shank, with which Oglesby threatened to attack both Plaintiff and an Officer Perry. In response, officers searched Oglesby's cell and recovered the shank.

7. Oglesby learned that Plaintiff had reported him to the authorities, and Oglesby began to continually taunt, threaten, and frighten Plaintiff, causing Plaintiff extreme agitation and distress.

8. Plaintiff reported to prison officials that Oglesby was threatening and frightening him and requested that they be housed apart from each other. This request was denied.

9. On the night of January 12-13, 2009, Oglesby's threatening and taunting Plaintiff resulted in Plaintiff suffering a severe panic attack, with chest pain and physical illness. Plaintiff requested emergency medical assistance and was taken to the nursing station.

10. After Plaintiff was assessed and given a mental health referral by the duty nurse, Plaintiff requested Defendant Sgt. Wall that Plaintiff be placed in a cell away from Oglesby, because of the demonstrated effect of the threats from Oglesby on Plaintiff. Wall refused this request although there were cells available in which Plaintiff could have been placed, and returned Plaintiff to the cell adjoining Oglesby.

11. Minutes after Plaintiff was left in his cell, Oglesby began again to taunt and threaten Plaintiff. Plaintiff called for help and Defendants Wall and Heh came to his cell. Plaintiff again explained why he needed to be taken away from Oglesby, and asked for their help. Instead Wall, with Heh's complicity, sprayed pepper spray into Plaintiff's cell through the food trap, onto Plaintiff, the floor, and his bedding. At the time the officer sprayed him, Plaintiff was secured in his cell and presented no threat of violence or injury to anyone.

12. Defendants Wall and Heh closed Plaintiff's food trap and left. Plaintiff's cell had pepper spray pooling on the floor and permeating the bed and air. Plaintiff could breathe only with great difficulty and could not wash all the pepper spray from his eyes and face.

13. Plaintiff again called for help, and Defendant Heh opened the food trap and sprayed Plaintiff directly in his face, causing severe pain and temporary blindness.

14. Some minutes after Heh sprayed Plaintiff in the face, Plaintiff was allowed to leave his cell and taken to a shower for decontamination from the pepper spray.

15. After his decontamination, Defendants Wilkes and Biles directed Plaintiff to accompany them back to his cell. Plaintiff told them his cell was soaked with pepper spray and he could not remain in it. He asked what would happen to him if he refused to

return and they told him he would remain in the shower until the next shift began. Plaintiff told them he would remain in the shower. Plaintiff sat naked on the shower floor and began to cry.

16. Defendant Wall came to the shower and ordered Plaintiff to dress and return to his cell. Before Plaintiff could comply, she sprayed him all over his body, including his genitals. When her pepper spray can was exhausted, she asked Defendants Biles and Wilkes for a replacement. One of those defendants gave her another can, and she exhausted it spraying Plaintiff's naked body, laughing at Plaintiff as she sprayed his penis. Defendants Wilkes and Biles watched her abuse of Plaintiff without interfering.

17. The Defendants left Plaintiff naked on the floor in the shower, ending their shift. Plaintiff was unable to turn the water on in the shower, and remained there, burning from the pepper spray, until the next shift of officers turned on the shower.

18. Throughout the abuse of Plaintiff recounted above, the Defendants acted in concert with one another, in mutual support and agreement for the deprivation of Plaintiff's rights under the Constitution of the United States and the Constitution and laws of North Carolina.

### Exhaustion of Administrative Remedies

19. In accordance with 42 U.S.C. §1997e, Plaintiff exhausted his administrative remedies by filing a grievance setting forth the misconduct by the Defendants herein alleged, and appealing each denial of his grievance through each step allowed by the North Carolina Department of Correction Administrative Remedy Procedure.

## Claims for Relief

20. The physical abuse of Plaintiff by the Defendants, acting in concert, was carried out sadistically and maliciously, rather than in any good faith attempt to enforce order or security.

21. Defendants' actions as described in this Complaint subjected Plaintiff to cruel and unusual punishment and to punishment without due process of law, in violation of the Eighth and Fourteenth Amendment of the Constitution of the United States.

22. Defendants' actions as described in this Complaint violated Plaintiff's rights under the regulations and statutes of the state of North Carolina and his right to due process of law under the Fourteenth Amendment of the Constitution by subjecting him to summary punishment, without notice, hearing, and the right to be heard.

## Prayer for Relief

23. Wherefore, Plaintiff asks this Court to award him compensatory and punitive damages against the Defendants, jointly and severally, in an amount to be found proved at trial, trial by jury, reasonable attorney fees, and other such relief as justice requires.

This March 2, 2010.

s/s J. Phillip Griffin
J.Phillip Griffin
Attorney for Plaintiff
NCSB #14436
N. C. Prisoner Legal Services, Inc.
Post Office Box 25397
Raleigh, North Carolina 27611
(919) 856-2200